```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
KATRON CHAVIS,                                   :
                Plaintiff,                       :
                                                 :
v.                                               :         OPINION AND ORDER
                                                 :
YELENA KOROBKOVA, ROBERT                         :         19 CV 83 (VB)
BENTIVEGNA, KENNETH MULLER,                      :
WILLIAM STEVENS, SERGEANT                        :
MULLIGAN, and EDWIN UZU,                         :
                Defendants.                      :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Katron Chavis, proceeding pro se and in forma pauperis, brings claims against Dr. Yelena Korobkova, Dr. Robert Bentivegna, Kenneth Muller, Correction Officer ("C.O.") William Stevens, Sergeant ("Sgt.") Mulligan, and Dr. Edwin Uzu, all of whom are employees of the New York State Department of Corrections and Community Supervision ("DOCCS").

Plaintiff's Section 1983 claims include: (i) a claim for deliberate indifference to serious medical needs against Dr. Korobkova, Dr. Bentivegna, Kenneth Muller, and Dr. Uzu; and (ii) an excessive force claim against C.O. Stevens and Sgt. Mulligan.

Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. #27).

For the following reasons, the motion is GRANTED. However, plaintiff is granted leave to file an amended complaint, as specified below.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

1

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as set forth below.[1]

Plaintiff is a convicted inmate currently housed at Upstate Correctional Facility. During the relevant time, plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven").

Plaintiff alleges three incidents, on October 21, 2018, at 8:00 p.m., November 4, 2018, at 11:45 a.m., and December 6, 2018, at 7:55 p.m., although he does not specify what took place on each date. Plaintiff does specify that Dr. Uzu allegedly provided testing for an unnamed medical condition, and those test results came back negative. Further, plaintiff alleges that on December 11, 2018, despite his negative test results, Dr. Korobkova gave plaintiff medication. According to plaintiff, he complained to Dr. Korobkova and Dr. Uzu that he was being given medication absent a diagnosis. Plaintiff alleges he made a prior complaint in writing to Dr. Bentivegna, Green Haven's Medical Director, concerning Dr. Korobkova.

Plaintiff also alleges that on an unspecified date, C.O. Stevens and Sgt. Mulligan "beat [and] punch[ed] [and] kick[ed] [him] with other C.O.s." (Doc. #1 ("Compl.") at ECF 4).[2] He

---

[1] Plaintiff filed a complaint, dated December 26, 2018. (Doc. #1). However, on March 11 and April 11, 2019, plaintiff wrote two letters to the Court, containing new allegations. (Docs. ##9, 12). The Court ordered that to the extent plaintiff's letters include allegations related to the claims in the complaint, the Court would construe plaintiff's letters as part of his complaint. (Docs. ##10, 18). Accordingly, the Court considers these letters, along with plaintiff's complaint, as the operative complaint for purpose of this motion.

[2] "Doc. # __ at ECF __" refers to document numbers and page numbers automatically assigned by the Court's Electronic Case Filing system.

further alleges Sgt. Mulligan "put [h]is [k]nee down on [plaintiff's] jaw" and threatened to kill plaintiff. (Id.).

Although plaintiff does not say he sustained injuries as a result of this altercation, he claims physical injuries, nevertheless. Specifically, plaintiff alleges: (i) he has pain in his stomach, jaw, and back; (ii) he suffered head trauma; and (iii) he experiences ongoing stinging and uncontrollable muscle movements throughout his entire body. Moreover, plaintiff claims to "need a MRI of [his] left foot." (Doc. #9 at ECF 5).

According to plaintiff, Dr. Korobkova twice sent plaintiff to see a neurological specialist, on November 6 and December 19, 2018. Plaintiff alleges the neurology specialist "couldn't figure out why" plaintiff was experiencing pain. (Doc. #9 at ECF 4).

Plaintiff alleges he has not received proper treatment or medication for his symptoms. Plaintiff maintains his "unknown medical condition" remains undiagnosed and his symptoms are worsening. (Doc. #9 at ECF 4). Plaintiff concedes that while "unbearable," his medical condition is "hard to explain." (Id. at ECF 2).

II. Grievance Procedure

Plaintiff alleges he filed a grievance respecting his medical care. He also alleges he "appeal[ed] to the Supt.," as well as the Central Office Review Committee ("CORC"). (Compl. at ECF 7). Moreover, plaintiff asserts in his opposition that he "put in many . . . grievances and [is] still waiting on the response from CORC." (Doc. #30 ("Pl. Mem.")).

**DISCUSSION**

I. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v.

Iqbal, 556 U.S. 662, 679 (2009).³ First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, … threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

---

³ Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

II. Abandoned Claims

Defendants argue plaintiff has abandoned his excessive force claim against C.O. Stevens and Sgt. Mulligan.

The Court agrees.

"Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim." Estate of M.D. by DeCosmo v. New York, 241 F. Supp. 3d 413, 423 (S.D.N.Y. 2017) (citing Robinson v. Fischer, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) (report and recommendation)).[4] "This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." Lipton v. County of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (collecting cases). "Application of this proposition is, however, tempered by this Court's discretion." Id.

Here, plaintiff writes in his opposition "I do agree for [sic] the motion to dismiss C.O. William Stevens and Sgt. Mulligan use of force." (Pl. Mem.). Thus, plaintiff concedes to defendants' position regarding his excessive force claim.

Accordingly, plaintiff's excessive force claim against C.O. Stevens and Sgt. Mulligan must be dismissed.

III. Exhaustion of Administrative Remedies

Defendants argue plaintiff's complaint should be dismissed because plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.

---

[4] Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

5

The Court disagrees. Although it is a close call, at this stage of the proceedings the Court finds plaintiff could have exhausted his administrative remedies, and accepts as true plaintiff's assertions in the complaint that he did exhaust prior to commencing this lawsuit.

Under Rule 12(b)(6), dismissal on the grounds of lack of exhaustion is appropriate when, on the face of the complaint, it is clear plaintiff did not exhaust all remedies, including all administrative appeals, before commencing the action. Woodford v. Ngo, 548 U.S. 81, 90–93 (2006). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

For a New York state prisoner to exhaust his claim, he must comply with the three steps of New York's Inmate Grievance Program ("IGP"): (i) submitting a complaint to the clerk of the Inmate Grievance Resolution Committee ("IGRC") within twenty-one days of the alleged incident, (ii) appealing the decision to the superintendent within seven days of the committee's response, and (iii) appealing to the Central Office Review Committee ("CORC") within seven days of the superintendent's response. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5.

Defendants argue that given the length of time between the dates plaintiff says the incidents occurred and the date he commenced this action, "it is virtually impossible for plaintiff's grievance to have been fully exhausted." (Doc. #28 ("Defs. Mem.") at ECF 17). That may well be the case. However, "a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if 'nonexhaustion is clear from the face of the complaint, and none of the exceptions outlined by the Second Circuit are germane.'" Lopez v. Cipolini, 136 F. Supp. 3d 570, 581 (S.D.N.Y. 2015) (citing Lovick v. Schriro, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014)).

6

Here, plaintiff's complaint, liberally construed, alleges that he exhausted the administrative appeals process prior to commencing this lawsuit. Plaintiff states in his complaint that he filed a grievance and appealed the grievance to CORC. (Compl. at ECF 7).

Accordingly, at this stage of the proceedings, the Court declines to dismiss on failure to exhaust grounds.

However, the record is unclear as to the exact status of plaintiff's efforts to exhaust. This issue may be addressed in a motion for summary judgment.

IV.     Eighth Amendment Claim

Assuming, without deciding, that plaintiff has satisfied New York's exhaustion requirement, the Court addresses plaintiff's Eighth Amendment claim.

Defendants argue plaintiff fails to state a claim for deliberate indifference to his serious medical needs.

The Court agrees.

   A.     Legal Standard

To state a claim for constitutionally inadequate medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has an objective prong and a mens rea prong: a plaintiff must plausibly allege (i) a "sufficiently serious" inadequacy of medical care, and (ii) that the officials in question acted with a "sufficiently culpable state of mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective prong has two subparts. First, a plaintiff must adequately plead he "was actually deprived of adequate medical care." Salahuddin v. Goord, 467 F.3d at 279. Because "the prison official's duty is only to provide reasonable care," prison officials violate the Eighth

7

Amendment only if they fail "'to take reasonable measures' in response to a medical condition." Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)). Second, a plaintiff must plausibly allege "the inadequacy in medical care is sufficiently serious." Id. at 280. Courts assess this by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Id. If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id. But if the offending conduct is the "medical treatment given, the seriousness inquiry is narrower." Id.

The mens rea prong requires the plaintiff to plausibly allege "the official acted with deliberate indifference to inmate health." Salahuddin v. Goord, 467 F.3d at 280. Mere negligence does not give rise to an Eighth Amendment violation. See Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010). Accordingly, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle v. Gamble, 429 U.S. at 106. In other words, medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness. See Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

However, it is well established that "negligence, even if it constitutes medical malpractice, does not, without more," give rise to a constitutional claim. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). "[D]istinguishing between negligent and reckless medical care is a difficult task, especially at the motion-to-dismiss stage where courts lack the benefit of expert opinion." Zhang v. City of New York, 2018 WL 3187343, at *8 (S.D.N.Y. June 28, 2018). Courts often look to the "degree of risk associated with the negligent treatment." See id. (collecting cases). Moreover, "mere disagreement over the proper treatment does not create a

constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to" a constitutional violation. Chance v. Armstrong, 143 F.3d at 703.

B.   Personal Involvement

To adequately plead a Section 1983 claim, a plaintiff must also "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676. The complaint must "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order). A plaintiff cannot "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." Id. Rather, a plaintiff must plead each defendant's personal involvement in an alleged constitutional violation.

A plaintiff may satisfy the personal involvement requirement by alleging one of the following:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[5] Moreover, Section 1983 liability cannot be predicated on a theory of respondeat superior. See City of Canton v. Harris, 489 U.S. 378, 385 (1989).

---

[5]   After Ashcroft v. Iqbal, district courts within this Circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these factors remain viable. See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016),

9

C.  Application

Here, plaintiff's complaint fails plausibly to allege a claim for deliberate indifference to serious medical needs against Dr. Korobkova, Dr. Uzu, Dr. Bentivegna, and Muller.

1.  Dr. Korobkova and Dr. Uzu

Plaintiff's allegations against Dr. Korobkova and Dr. Uzu fail to satisfy the first prong of the Eighth Amendment deliberate indifference analysis—that the alleged deprivation of medical care was sufficiently serious. As a preliminary matter, according to the complaint, both Dr. Korobkova and Dr. Uzu have provided medical treatment to plaintiff. Plaintiff alleges Dr. Korobkova twice sent him to a neurological specialist to aid with diagnosis, and Dr. Uzu performed tests on plaintiff for unnamed medical conditions, which came back negative. Because Dr. Korobkova and Dr. Uzu provided plaintiff with treatment, "the seriousness inquiry is narrower." Salahuddin v. Goord, 467 F.3d at 280 (quoting Smith v. Carpenter, 316 F.3d at 185).

Here, plaintiff claims Dr. Korobkova and Dr. Uzu have not provided plaintiff with medical care because Dr. Korobkova and Dr. Uzu have not diagnosed the cause of plaintiff's symptoms. But inability to diagnose is insufficient on its own to allege a constitutional claim for deliberate indifference to serious medical needs. Hathaway v. Coughlin, 99 F.3d 550, 554 (2d Cir. 1996) ("[M]erely inadvertent failure to adequately diagnos[e] or treat the plaintiff's medical condition might be sufficient to make the defendant liable in a medical malpractice or negligence action. However, such an inadvertent failure is not sufficiently reckless to establish a claim under the Eighth Amendment.") (alteration in original).

---

reconsideration granted in part and denied in part, 2016 WL 5900217 (S.D.N.Y. July 29, 2016). The Second Circuit has yet to resolve this dispute. Id.

Moreover, plaintiff asserts he was not given an MRI, but there is no indication an MRI was an appropriate diagnostic test. See Victor v. Milicevic, 361 F. App'x 212, 215 (2d Cir. 2010) (summary order) ("Whether to order an MRI or similar diagnostic treatments is a classic example of a matter for medical judgment."). Indeed, plaintiff concedes he had many "test[s] done while in cus[to]dy of NYS DOCC[S]," including by Dr. Korobkova and Dr. Uzu. (Doc. #9 at ECF 5). Accordingly, plaintiff's submissions fail to allege Dr. Korobkova or Dr. Uzu deprived plaintiff of care for a sufficiently serious medical need.

### 2. Dr. Bentivegna and Muller

Plaintiff has not plausibly pleaded either Dr. Bentivegna or Muller's personal involvement in a serious medical deprivation. According to plaintiff, he wrote a letter to Dr. Bentivegna on October 23, 2018, to complain about the care he was receiving from Dr. Korobkova. However, there is no indication in plaintiff's submissions that Dr. Bentivegna was involved in any decision-making respecting plaintiff's medical care. Thus, plaintiff has failed adequately to allege Dr. Bentivegna's personal involvement in any sufficiently serious medical care denial.

As to Muller, plaintiff's submissions are devoid of any factual allegations concerning Muller. In fact, Muller's name appears in the caption of the complaint only. Thus, plaintiff fails to plead Muller's personal involvement in plaintiff's medical treatment or lack thereof.

Accordingly, plaintiff's deliberate indifference claim must be dismissed.[6]

---

[6] Because the Court concludes plaintiff's claims respecting Dr. Korobkova and Dr. Uzu must be dismissed, the Court need not address Dr. Korobkova and Dr. Uzu's qualified immunity arguments.

V.    Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants, who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000). District courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

Here, because a liberal reading of the complaint indicates a valid Eighth Amendment claim might be stated against Dr. Korobkova and Dr. Uzu, the Court grants plaintiff leave to file an amended complaint—but only to replead his deliberate indifference to medical needs claim, and only with respect to defendants Dr. Korobkova and Dr. Uzu—to the extent plaintiff can do so clearly, concisely, truthfully, and plausibly.

To the greatest extent possible, plaintiff's amended complaint must address the deficiencies identified in this Opinion and Order, and must:

1.    Describe all relevant events, stating the facts that support plaintiff's case, including what Dr. Korobkova or Dr. Uzu did or failed to do;

2.    Include a clear explanation of the health issues plaintiff attributes to any untimely or improper medical treatment;

3.    Include any details explaining why plaintiff believes Dr. Korobkova and Dr. Uzu untimely or improperly treated him;

4.    Give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event; and

5. Describe how Dr. Korobkova or Dr. Uzu's acts or omissions violated plaintiff's rights, and describe the injuries plaintiff suffered as a result of those acts or omissions.

Essentially, the body of plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why plaintiff is entitled to relief.

**Plaintiff is reminded that any factual allegation in the amended complaint must be true to the best of his knowledge, information, and belief. See Fed. R. Civ. P. 11(b)(3). Also, the amended complaint will completely replace the complaint and its attachments; therefore, plaintiff should include in the amended complaint <u>all</u> information necessary for his claim, including all information necessary to show that he fully exhausted the grievance procedure.**

**CONCLUSION**

The motion to dismiss is GRANTED. However, plaintiff is granted leave to file an amended complaint as to his claim for deliberate indifference to serious medical needs against defendants Dr. Yelena Korobkova and Dr. Edwin Uzu only, in accordance with the instructions above.

Plaintiff shall file his amended complaint by no later than May 13, 2020, using the amended complaint form attached to this Opinion and Order. **If plaintiff fails to file an amended complaint or seek additional time to do so by May 13, 2020, the Court will deem plaintiff to have abandoned this case and will direct the Clerk to enter judgment in defendants' favor, and close the case.**

The Clerk is instructed to terminate the motion. (Doc. #27).

The Clerk is further instructed to terminate from the case defendants Correction Officer William Stevens, Sergeant Mulligan, Dr. Robert Bentivegna, and Kenneth Muller.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: March 13, 2020
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge